05.1595 Mr. Morse, who is in the position probably most lawyers wish for, the opportunity to make an argument with no opposition. May it please the court, good afternoon. On behalf of Louisville Bedding Company, as well as its president and CEO, Steve Elias, and its vice president and the named inventor on the 322 patent, Mr. Mike Segoe, who I found in what is remaining of the gallery today. I am Hartwell Morse, and I thank you for the merits of Louisville Bedding's appeal, given that my opponent, the defendant, Pillowtex Corporation, did not participate in this appeal. I respectfully submit to this panel that the district court abused its discretion when it refused to restore to Louisville Bedding the opportunity to pursue infringement by non-licensed Model 4039 mattress pads. You're saying, when you say denied the opportunity, it didn't say nobody was saying you couldn't file an action, but you're saying there's a de facto bar to that in the claim construction, earlier construction of Judge Simpson, is that correct? I have taken the position, Your Honor, and it was one based on experience in a subsequent litigation between Louisville Bar to arguing the different interpretations of the claims of the 322 patent. So the real problem, and I just want to clarify, the real problem, in your view, for your client, is that Simpson, what we'll call the Simpson claim construction. Yes, sir. I do have a problem with that, and I return to Judge Simpson after a series of extraordinary circumstances which I am prepared to discuss to try to seek just partial relief for claim 34 of the 322 patent to remove the collateral estoppel effect of what is arguably, and I do not contest, was a consent judgment based upon a settlement to remove that collateral estoppel bar so that I could deal with what was an unexpected consequence of the settlement that no one anticipated, and that was that during the life of the 322 patent that unlicensed model 4059 mattress pads would find its way into the market. There are three essentially extraordinary situations that have occurred over the period of this case which I argue overcome the interests of the finality and integrity of the 1998 judgment, at least with respect to claim 34 of the 322 patent, and I recognize and I acknowledge that both in front of Judge Simpson and in front of this panel, I do not have an opponent. Nevertheless, the policies that I am arguing against are the finality of a judgment as well as perhaps the policy of supporting settlements in this case. Arrayed against that, the arguments both here and that are part and parcel of Rule 60b-6 motion. But litigation should come to an end. You had a claim construction. You could have gone ahead and appealed it. You settled it. You precisely hit the nail on an interesting and the very first extraordinary... That was the lumber case. And I'm not wearing $500 jeans, but Your Honor, you hit the nail on the head on the first extraordinary circumstance in this case, and that is that we have a final judgment by consent, but we have a situation before you in which the party, Pillow Text, during the course of the litigation, obtained an interlocutory opinion on summary judgment that there was no infringement literally under the document equivalence by its newly introduced model 40-59 MACRA standard. And then as part of the settlement, it bargained to have that interlocutory opinion made final. But you agree, do you not, that the standard of review we're applying here is abuse of discretion? Yes, I do, Your Honor. So you would have us say that when a district court under these circumstances refuses to grant the motion, then that court has abused discretion? I am arguing, Your Honor, that in the exceptional circumstances and the requirements of justice and equity, which are incorporated in the Rule 16b-6 segment of that rule, that in this instance, there was an abuse of discretion. And I would finish the concept, though, that we have this situation where Pillow Text won on summary judgment. It bargained for and got a final judgment based upon its interlocutory summary judgment order. But when it came time to settle this case, it did not take advantage of its win. It is a situation in where, as disclosed in the recitals of the settlement agreement in Exhibit B, the license agreement, that Pillow Text desired and had already sold substantial quantities of the non-infringing model 40-59 MACRA standard, intended to do so in the future, yet it desired to receive from Louisville Bedding a license. And Louisville Bedding granted them the license under 40-59. On the one hand, you have a bargain for a final judgment of non-infringement. On the other hand, you have the party who won and bargained for that non-infringement to actually not take advantage of it and take a license. I have attempted And paid $11 million in total. Actually, what's even more interesting in the settlement agreement, there's $11 million in there, that is correct. One million of it is earmarked for settling Louisville Bedding's claims of infringement of the 40-59 patent by the 40-59 material before the settlement. And the remaining $9 million is reserved in payment for a lump sum royalty for practicing just the model 40-59. Under the license. Under a license, under the 3-2-2 patent, that already believed that this product is not infringing under the judgment, yet they paid us $9 million for a license to practice just to sell the 40-59 under the Louisville Bedding patents. And that is one of the extraordinary circumstances and situations raised in this case. And from the concept of, you know, shouldn't we support settlement? In this settlement, I try to... Let me ask you more. Excuse me. How is that an extraordinary circumstance? I mean, you have a, you know, particular term, the parties are in litigation, the district court makes a ruling, and then based on that, the parties step back, they assess their respective positions, they enter into a settlement agreement, and each party gets something out of it. And then down the road, circumstances develop. We know that Pillow Text went into bankruptcy and I guess ultimately was dissolved. I mean, it's unfortunate, but how is it unusual? These kind of things can happen. I think it's unusual, Your Honor, because I think under the concept of Rule 60B-6, you know, I think that it is a factor to consider into whether or not that policy should swamp and overtake the arguments that we have made equitably and for justice in this case, at least with respect to Rule 34 of the 3-2-2 patent. I have attempted to recreate for the court the environment and spirit in which the settlement was raised, both in terms of what the home industry's market was like and what it was facing. But when we settled this case, it was known that 4059 was an exclusive product of Pillow Text, that the actual manufacturer of the skirt material, DuPont, was in an exclusive arrangement with Pillow Text and could be the only one who would put 4059 in the marketplace. And then thereafter, for the six years following that settlement, the marketplace knew, including the competitors who are now in the marketplace with unlicensed Model 4059 material, that Louisville Bedding and Pillow Text had settled and that there was a license and that the millions of mattress pads themselves sold since that settlement were sold under a license from Louisville Bedding and were sold with marking. The packages are marked as licensed under Louisville Bedding's patents. You have alluded, Your Honor, to the second situation, and that would be where they went bankrupt and that gave a situation where, all of a sudden, Zymath, the actual maker of the skirt that is used on the mattress pad, went into the market and all of a sudden we were seeing what I'm going to call unlicensed Model 4059 mattress pads appearing in the market. You're saying unlicensed because it's a party other than Pillow Text. That is correct, Your Honor. That's why you call it unlicensed. This keeps lining up because it lines up with one of the parties that it approaches is our competitor, Perfect Fit. Perfect Fit had been in litigation with Louisville Bedding. There was a settlement agreement. Zymath shows up with Perfect Fit to try to sell the 4059 skirt material. That implicates an ADR proceeding under a settlement agreement with Louisville Bedding. Ultimately, the question was submitted to an arbitrator who, in this case, was a practicing patent attorney, licensed to practice in the patent office, with experience in textiles and home furnishings. He determined, in that instance, because of the nature of the settlement between Perfect Fit and Louisville Bedding, that the collateral estoppel effect of Judge Simpson's 1998 judgment did not apply in those instances. But how can the judgment of an arbitrator trump judgment of a district court? Because that judgment of the arbitrator, Your Honor, is also a judgment of the courtroom right next to what I'll call Chief Judge Simpson's courtroom, because the ADR provision was part and parcel of another lawsuit by Judge Kaufman in the Western District of Louisville. And when we prevailed in the mediation, in which the court found, or the mediator found, that he was not bound by Judge Simpson's interpretation, he found that Judge Simpson had violated two rules of canon construction, including the doctrine of claim differentiation, as well as importing limitations of claim differentiation. The way you deal with that, though, is to appeal. I'm sorry? The way one deals with those errors, if they are errors, is to appeal, not to get an arbitrator to say, well, that was all wrong. The agreement between Louisville Bedding and Perfect Fit, which was implemented by Perfect Fit, is that we are done arguing in court. We are going to go for binding, non-appealable mediation, in this case, before a professional patent attorney, which is what we did. Part and parcel of that agreement in Perfect Fit is that we can then have that decision by the mediator entered as a judgment in a district court. And that is the third leg of the stool that occurred in February of 2005, that he did indeed, or she did indeed, enter this determination of infringement by a Perfect Fit mattress pad using the Model 4059 material. It would infringe Claim 34 of the 322 patent, and she entered as a judgment the 15-page or 20-page memorandum of the mediator. So we now have in a situation where collateral estoppel does apply, there's a ruling for the very same mattress pad that there is no infringement balanced against the judgment arising out of the Perfect Fit mediation, where if collateral estoppel does not apply, then there is infringement under Claim 34 by the Model 4059 mattress pad. And those are the three extraordinary circumstances that underlie why we went to Judge Simpson, and that is a chronology. We did not go to Judge Simpson until this situation had arisen with respect to Perfect Fit, and the mediator and then the judge had entered a judgment that in the absence of collateral estoppel that there could be infringement. The equities in this case have already been debriefed, but generally right now we have parties who have not, unlike Pillowtex, have not paid Louisville Bedding for a license. They have been in the marketplace both before and during and after the litigation with Pillowtex knowing that Pillowtex had been licensed under the 4059 and that Pillowtex had paid for that license. And I went back to Judge Simpson, and under the equities that were about, I had requested that he relieve me just from that portion of his previous judgment that dealt with Claim 34 of the 322 patent so I could attempt to license. We would really like to license, but I want to enforce Claim 34 in light of the circumstances that came out of the Perfect Fit case. And the equities are there, but I suggest that this is a serious problem for Louisville Bedding. It thought that it had taken care of 4059, and it was unusual that a company that was 8 times the size of Louisville Bedding disappeared overnight and all of a sudden this material has now appeared in court. And people who have not paid Louisville Bedding, unlike Pillowtex which secured the non-infringement final judgment, have not paid Louisville Bedding. And we would like that opportunity to do so. Thank you, Mr. Morris. Case will be taken under advisement. All rise. There are no courts in Jersey, North Carolina, and Canada.